# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00372-SCT

*SUSAN R. MOSS, TRACY M. NICHOLS, KENNY R.*
*MOSS AND RORY A. GARCIA*

*v.*

*BATESVILLE CASKET COMPANY, INC. AND OTT*
*& LEE FUNERAL HOME*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2004 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | T. JACKSON LYONS |
| | EVELYN TATUM PORTIE |
| ATTORNEYS FOR APPELLEES: | GEORGE MARTIN STREET, JR. |
| | JAMES D. HOLLAND |
| | J. WADE SWEAT |
| | MARISA CAMPBELL ATKINSON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 07/27/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Susan R. Moss, Tracy M. Nichols, Kenny R. Moss, and Rory A. Garcia (collectively, the "Plaintiffs") originally filed suit on December 7, 2001, against Ott & Lee Funeral Home (Ott & Lee) and Batesville Casket Company, Inc., (Batesville) (collectively, the "Defendants")

alleging claims of breach of implied warranty of merchantability, breach of implied warranty of fitness, strict products liability, negligence, tortious interference with a dead body, intentional infliction of emotional distress, fraud, negligent misrepresentation, and punitive damages. Both Ott & Lee and Batesville timely responded to the complaint by filing general and specific denials and asserting affirmative defenses.

¶2.     After a period of discovery, including written requests for discovery and depositions, had occurred, both Ott & Lee and Batesville filed motions for summary judgment in November 2002, asserting that they were entitled to judgment as a matter of law based on the lack of evidence supporting the Plaintiffs' claims. The Plaintiffs filed a joint response to the Defendants' motions for summary judgment.

¶3.     On October 4, 2004, the Plaintiffs filed their first amended complaint. Ott & Lee answered the amended complaint on October 20, 2004, and Batesville answered on October 26, 2004. Again, the Defendants responded to the complaint with general and specific denials and asserted affirmative defenses. Subsequently, the Plaintiffs on October 27, 2004, filed their supplemental response to the Defendants' motions for summary judgment.

¶4.     On December 28, 2004, the trial court found no genuine issues of material fact existed and issued two separate orders granting each of the Defendants' motions for summary judgment as a matter of law in separate opinions. The Plaintiffs filed a motion for reconsideration; both Defendants responded to the motion for reconsideration. The trial court denied the motion for reconsideration on February 14, 2005.

¶5. The Plaintiffs raised confusion with the trial court regarding whether the two orders were final judgments because the orders failed to state "final judgment." The Plaintiffs continued to submit additional evidence and requested additional findings. Accordingly, the trial court designated the two orders granting summary judgment as "final judgments," and the trial court granted the Plaintiffs an extension of time in which to file their notice of appeal. The Plaintiffs now appeal to this Court.

### FACTS

¶6. On March 7, 1999, Nancy Moss Minton, the Plaintiffs' mother, died.[1] The Plaintiffs engaged Ott & Lee in Morton, Mississippi, as the funeral home to handle the burial services. From the models on Ott & Lee's showroom floor, they selected a Pembroke cherry wood casket manufactured by Batesville. According to the Plaintiffs, the cherry wood casket "looked like" their mother and "suited her" because all the furniture in her home was cherry wood. Based on all the Plaintiffs' depositions in the record, the choice of a cherry casket was made for purely aesthetic reasons because it looked like their mother and their mother was very fond of that type of wood. The Plaintiffs contend that they were told by Ott & Lee that the casket was "top of the line."

¶7. At the time the wooden casket was selected, the employees of Ott & Lee informed the Plaintiffs that a wooden casket could not be sealed like a metal casket. The Plaintiffs testified in their depositions that Ott & Lee's employee, Ray Pardue, informed them that the wooden

---

[1] The Plaintiffs, Susan Moss, Tracy Nichols, Kenny Moss, and Rory Garcia, are the four adult children of Nancy Moss Minton, deceased.

casket would not seal. The Plaintiffs admit Ott & Lee suggested that a concrete vault be used with a wooden casket, and they elected to use a concrete vault. According to the Plaintiffs, Ott & Lee told them the vault would keep the pressure of the dirt off the casket and prevent water from reaching the casket. Ott & Lee made no misrepresentations to the Plaintiffs about the ability of a wooden casket to preserve the remains, and the Plaintiffs admit that they did not inquire about its ability to preserve the remains. In fact, Susan Moss, one of the Plaintiffs, testified in her deposition that she was aware that a wooden casket could not seal, but she still chose a wooden casket for her mother's remains. According to the Defendants, the Plaintiffs did not request any other information regarding wooden caskets, request any particular characteristics in a casket, or discuss what they wanted from a casket regarding protection of the remains. Kenny Moss testified that he did not recall anyone asking Pardue for any recommendation as to which casket they should choose. Kenny further testified that he did not recall Pardue ever stating which casket was better or which one they should buy.

¶8. The wooden casket had a written warranty from Batesville that expressly disclaimed any implied warranties and limited liability as to replacement of the casket. Batesville's warranty for a hardwood casket, that it provided to the funeral director and the funeral director's client, only warranted the hardwood casket until the time of interment.

¶9. The full pre-interment warranty certificate for a Batesville hardwood casket stated:

> That this Batesville Hardwood Casket is manufactured from solid hardwoods, and is free from defects in materials and workmanship. If, at any time prior to the interment of this casket in an initial place of interment, it is found to be defective in materials or workmanship, Batesville will, within ten days after notice to it, replace this casket with one of similar quality provided it was

4

properly handled in the funeral director's possession and an opportunity is afforded for examination of the casket by Batesville representatives and/or impartial experts designated by them.

Batesville employees or representatives are not authorized to change this warranty in any way or grant any other warranty. *Batesville shall not be responsible for any consequential damages arising out of any breach of this express warranty or any implied warranties.* Some states do not allow the exclusion of limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. The purchaser's remedy shall be strictly limited to replacement of the casket as stated in the preceding paragraph.

¶10. The Plaintiffs' mother was buried on March 9, 1999. Later believing that a medical malpractice claim may have existed against the decedent's medical care providers, the Plaintiffs had the decedent's body exhumed for an autopsy. Accordingly, approximately two and one-half years after the burial, the Plaintiffs had their mother's body exhumed on August 10, 2001, to investigate a possible medical malpractice claim.[2] However, the autopsy revealed that the Plaintiffs' mother died of natural causes, not medical malpractice. When the casket was exhumed, the Plaintiffs observed visible cracks and separation in the casket. As the casket was removed, it began to dismantle. The body remained in the casket, and none of the Plaintiffs saw the body. Only Susan Moss and Kenny Moss were present at the exhumation.

¶11. The record does not reveal any evidence showing any damage to the body linked to the separation and cracks in the casket at issue, and the Plaintiffs admitted that they did not have

---

[2] The exhumation was performed by Doric Vault Company, Wilcox Funeral Home, and Johnny Harrell.

any evidence that the body was not properly preserved. Furthermore, without admitting any liability or obligation and clearly stating so in a letter to the Plaintiffs' counsel, Batesville furnished a metal casket free of charge to the Plaintiffs for the reburial.

¶12. The Plaintiffs did not present the trial court with any expert with any specialized knowledge related to caskets. However, Dr. Ramsay Smith's report and evaluation dated May 31, 2004, were supplied at the motion for summary judgment and considered by the trial court in its ruling. Dr. Smith, a forest products consultant with the Louisiana Forest Products Development Center at Louisiana State University, purported to be an expert in wood rot, decay, and degradation. Dr. Smith did not find any problem with the physical and/or mechanical properties of the wood. He stated that decay is a natural process in wood, but that wood is a proper material to use to manufacture a casket. He determined that the casket had separated at the glued joints based on poor adhesive bonds where the cherry wood boards had been glued together to form the casket.

¶13. However, Dr. Smith testified in his deposition that he did not hold himself out as an expert in the field of adhesives. Dr. Smith's report and deposition were both considered by the trial court in ruling on the motion for summary judgment. Based on Dr. Smith's testimony, the trial court gave no weight to Dr. Smith's findings as to the adhesive or glue bonds. The trial court further stated that "the heart of Dr. Smith's report laid the fault at the glue-line failures, a field which was not in the area of his expertise."

¶14. Dr. Moon Kim, a professor at Mississippi State University in the Department of Forest Products and Forest Products Laboratory, purported to be an expert in wood and glue. Dr.

6

Kim's affidavit provided that the glue used in the casket was improper, and as a result, it did not provide an effective bond for the joints. However, Dr. Kim's affidavit was not offered to the trial court for consideration in rendering its decision on the motion for summary judgment. Dr. Kim's affidavit appeared for the first time as an attachment to the Plaintiffs' motion for reconsideration. The trial court denied the motion for reconsideration without any reference to the new report from Dr. Kim. The trial court specifically addressed the Plaintiffs' counts of breach of implied warranty for fitness, particular purpose; breach of implied warranty for merchantability, ordinary purpose; strict products liability; and negligence. The trial court did not specifically address the remaining counts, finding that the warranty counts were dispositive of the remaining counts. The trial court granted summary judgment in favor of the Defendants, and subsequently denied the Plaintiffs' motion for reconsideration. On appeal, the Plaintiffs raises the following issues:

I.      Whether the trial court erred in granting summary judgment to the Defendants on the count of breach of an implied warranty of fitness for a particular purpose.

II.     Whether the trial court erred in granting summary judgment to the Defendants on the count of breach of an implied warranty of merchantability for an ordinary purpose.

III.    Whether the trial court erred in granting summary judgment to the Defendants on the products liability count under Miss. Code Ann. § 11-1-63.

IV.     Whether the trial court erred in granting summary judgment to the Defendants on the negligence counts.

**DISCUSSION**

¶15.     This Court applies a de novo standard of review to the trial court's grant of summary judgment. *Stuckey v. Provident Bank*, 912 So. 2d 859, 864 (Miss. 2005). *See also Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001). *Russell v. Orr*, 700 So. 2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). "This Court employs a factual review tantamount to that of the trial court when considering evidentiary matters in the record." *Williams v. Bennett*, 921 So. 2d 1269, 1272 (Miss. 2006).

¶16.     Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c); see *Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss. 1998).     The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990). *See also Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).

8

¶17. "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Tucker*, 558 So. 2d at 872.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense . . . the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

*Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994) (citing *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See Russell*, 700 So. 2d at 622; *Richmond*, 692 So. 2d at 61; *Northern Elec.*, 660 So. 2d at 1281; *Simmons,* 631 So. 2d at 802; *Tucker*, 558 So. 2d at 872.

¶18. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So. 2d at 61 (citing *Lyle v. Mladinich,* 584 So. 2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So. 2d at 61.

9

## I.  Implied warranty for fitness for a particular purpose

¶19.  The Plaintiffs contend that they were told by Ott & Lee that the casket was "top of the line."  Before the Plaintiffs selected the wooden casket, the employees of Ott & Lee informed the Plaintiffs that a wooden casket could not be sealed like a metal casket.  The Plaintiffs admit that they were aware that a wooden casket would not seal.  Ott & Lee suggested a concrete vault be used with a wooden casket which the Plaintiffs purchased.  The Defendants contend that the Plaintiffs' determinative factor as to the chosen casket was purely appearance.  The Defendants argue that in choosing the casket the Plaintiffs never expressed any concern over how long the remains would be preserved.  In fact, the Plaintiffs do not assert any specified time or number of years that they expected the remains to be preserved.  Furthermore, nothing in the record demonstrates that the remains were not in fact properly preserved or had been affected by any cracks in the casket at the time the Plaintiffs had the body exhumed for the autopsy.

¶20.  Miss. Code Ann. § 75-2-315 (Rev. 2002) establishes the foundation for the concept of an implied warranty for fitness for a particular purpose.  That statute provides in pertinent part:

> Except as otherwise provided in this section, where the seller **at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods**, there is an implied warranty that the goods shall be fit for such purpose. . . .

Miss. Code Ann. § 75-2-315 (emphasis added).  In order to recover under the theory of implied warranty of fitness for a particular purpose, a plaintiff must present evidence

sufficient for the jury to find: "(1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose." *Garner v. S & S Livestock Dealers, Inc.*, 248 So. 2d 783, 785 (Miss. 1971). *See also Lacy v. Morrison*, 906 So. 2d 126, 131 (Miss. Ct. App. 2004). The warranty of fitness for a particular purpose does not arise unless there is reliance on the seller by the buyer, and the seller selects goods which are unfit for the particular purpose. *Garner,* 248 So. 2d at 785.

¶21. During discovery, depositions were taken from the Plaintiffs, Susan Moss, Tracy Nichols, and Kenny Moss. These depositions, which were provided to the trial court on motion for summary judgment, demonstrate that the Plaintiffs purchased the wooden casket for its aesthetic value. Susan Moss testified:

> We spotted the cherry wood casket, and he walked us over there to it. Ray Pardue walked us over there to it and we all decided, standing there - us four - that it looked like our mother. That's - I mean - she had everything in her house was cherry wood. I mean, it just look like her. We asked Ray about the casket. I mean, I'm not stupid. I know a casket won't seal - a wood casket.

¶22. Tracy Nichols testified:

> We were looking at the different caskets, and when we saw the wood casket, we knew that we wanted this one for Mother because it looked just like her - a wood cherry casket. And we were just all - was in agreement with it.

¶23. In his deposition, Kenny Moss testified that the reason he chose this casket was because his mother "just liked cherry wood furniture." He further stated, "[i]t just suited her."

11

¶24. The trial court determined that summary judgment was appropriate. In its findings of fact, the trial court stated: "This particular casket was chosen because their mother was especially fond of cherry wood furniture, and they felt she would have been happy about the decision." In the trial court's conclusion of law, the trial court stated:

> The Court is convinced from the deposition testimony that the Plaintiffs were well aware of the characteristic differences between a wooden casket as compared to a metal one, but that the former was selected because of their mother's love of cherry wood.

The trial court found "the *fitness* purpose aspect was served during the time the decedent's body was placed in the casket and viewed by family members, loved ones [,] and friends at the funeral home."

¶25. Here, the evidence did not justify the submission of this case to a jury on the issue of warranty of fitness for a particular purpose. Nothing in the record provides that the Plaintiffs identified any particular purpose to the Defendants when the casket was selected. Furthermore, assuming arguendo that the Plaintiffs sought to preserve their mother's remains for some unspecified, indefinite period of time in the wooden casket, the record is completely devoid of any proof that the body had been damaged in any way by the alleged problems with the casket. As such, the burial had preserved the remains until the Plaintiffs had their mother's remains unearthed and the autopsy performed. We find the trial court did not err in granting summary judgment on this issue.

**II.     Implied warranty for merchantability for an ordinary purpose**

¶26. The Plaintiffs argue that, as reasonable consumers, they expected the casket to preserve the remains for an indefinite period of time. The Defendants contend that even if the Plaintiffs' theory that the ordinary purpose of the casket was to preserve the remains for an indefinite or some unknown period of time is accepted as true, there is no evidence in the record which indicates the remains were not in fact properly preserved for an indefinite or unknown period of time. When the remains were exhumed by the Plaintiffs approximately two and one-half years after burial, the record reflects the remains were preserved. The Plaintiffs present no claim that the remains had been damaged in any way by the cracks and separations. As such, the Defendants assert the Plaintiffs' alleged ordinary purpose of the casket was satisfied.

¶27. Furthermore, the Defendants contend that the Plaintiffs fail to demonstrate that the casket selected was not merchantable or did not fulfill its ordinary purpose. In *Craigmiles v. Giles*, 110 F. Supp. 2d 658, 662 (E.D. Tenn. 2000), affd. 312 F. 3d 220 (6th Cir. 2002), which is cited by the Ott & Lee, the district court stated:

> A casket is nothing more than a container for human remains. Caskets are normally constructed of metal or wood, but can be made of other materials. Some have "protective seals," but those seals do not prevent air and bacteria from exiting. All caskets leak sooner or later, and all caskets, like their contents, eventually decompose.

¶28. Likewise, Batesville contends the ordinary purpose of a wooden casket is to house the remains of the departed until interment. Batesville argues that ordinary purpose includes uses which the manufacturer intended and those which are reasonably foreseeable. *See* 77A C.J.S. Sales to Salvage § 256(b) (1994) ("The ordinary purposes contemplated by the [Uniform

13

Commercial] Code include both those uses which the manufacturer intended and those which are reasonably foreseeable.") Accordingly, Batesville asserts that it would not be reasonably foreseeable that any customer would expect a wooden casket to preserve the remains for an indefinite period of time as claimed by the Plaintiffs.

¶29. Miss. Code Ann. § 75-2-314 (Rev. 2002) establishes the statutory foundation for the concept of an implied warranty for merchantability for an ordinary purpose. Miss. Code Ann. § 75-2-314 provides in pertinent part:

> (1) Except as provided in subsection (5), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
>
> (2) Goods to be merchantable must be at least such as:
>
>> (a) Pass without objection in the trade under the contract description; and
>> (b) In the case of fungible goods, are of fair average quality within the description; and
>> (c) **Are fit for the ordinary purposes for which such goods are used**; and
>> (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>> (e) Are adequately contained, packaged and labeled as the agreement may require; and
>> (f) Conform to the promises or affirmations of fact made on the container or label if any.
>
> (3) Other implied warranties may arise from course of dealing or usage of trade.
>
> * * *
>
> (5) Nothing in this section shall prohibit the express disclaimer or express modification of any implied warranties of merchantability . . . .

14

(Emphasis added).

¶30. The trial court found that the ordinary purpose for which the casket was designed ceased once the pall bearers bore the casket from the hearse to the grave site for burial.[3] However, the record does not indicate that the Plaintiffs ever stated a specified period of time that they, as a reasonable customer, would have reasonably expected the wooden casket to last. The Plaintiffs contend that they reasonably expected the casket to protect the remains for an indefinite period of time. Indefinite is defined as "without fixed boundaries or distinguishing characteristics; not definite, determinate, or precise." Black's Law Dictionary 393 (5th ed. 1983). As previously stated, the record also fails to demonstrate that the remains were damaged in any way from the alleged cracks and separation when the casket and body were exhumed. Accordingly, we find the Plaintiffs' assignment of error is without merit.

### III.    Strict Products Liability

¶31. In order "[t]o prevail in a products liability case, the Plaintiff must prove not only a defect in the product, but also that the defect made the product 'unreasonably dangerous.'"

---

[3]   The Plaintiffs contend that this issue must be resolved by a jury, and as such, the trial court could not rule on the motion for summary judgment. The Plaintiff relies on *Royal Lincoln-Mercury Sales, Inc. v. Wallace*, 415 So. 2d 1024, 1027 (Miss. 1982). However, the Plaintiffs take the Court's holding out of context. The Court in *Royal*, 415 So. 2d at 1027, was concerned with whether attorneys' fees were appropriate under the facts of that case, stating:

> The relevant issue, reasonable opportunity to cure, was factual and in our opinion was properly left for the jury's determination under correct instructions. The issue was resolved in plaintiff's favor by the jury as is evidenced by its verdict. Thereafter, upon proper motion, the court awarded attorneys fees. We are of the opinion the Magnuson-Moss Warranty Act did have application and that the issue presented under it was properly resolved.

15

*Pickering v. Industria Masina I Traktora (IMT)*, 740 So. 2d 836, 843 (Miss. 1999)

(quoting *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 253 (Miss. 1993)).   Miss. Code

Ann. § 11-1-63 (Rev. 2002) codified strict liability law and provides in pertinent part:

> (a) The manufacturer or seller of the product **shall not be liable** if the claimant does not **prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller**:
>
>> (i)  1. The **product was defective** because it **deviated in a material way from the manufacturer's specifications** or from otherwise identical units manufactured to the same manufacturing specifications, or
>>
>> 2. The product was defective because it failed to contain adequate warnings or instructions, or
>>
>> 3. The product was **designed in a defective manner**, or
>>
>> 4. The **product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product**; and
>>
>> (ii) **The defective condition rendered the product unreasonably dangerous to the user or consumer; and**
>>
>> (iii) **The defective and unreasonably dangerous condition of the product proximately caused the damages** for which recovery is sought.
>
> (b) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an **inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community**.

16

* * *

(e) In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is **open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.**

(f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

* * *

(Emphasis added).

¶32. Dr. Smith was the only expert that the Plaintiffs offered in defense of the Defendants' motion for summary judgment. Dr. Smith, an expert in wood rot, decay, and degradation, did not find any problem with the physical and mechanical properties of the wood. He further stated that decay is a natural process in wood even though wood is a proper material to use to manufacture a casket. He determined that the casket had separated at the glued joints based

17

on poor adhesive bonds where the cherry wood boards had been glued together to form the casket.

¶33. Rule 702 of the Mississippi Rules of Evidence addresses the admissibility of expert testimony. M.R.E. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness **qualified as an expert by knowledge, skill, experience, training, or education**, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added). In *Tunica County v. Matthews*, 926 So. 2d 209, 213 (Miss. 2006), this Court recently examined the requirements for allowing expert testimony, stating:

> In *McLemore* [*Mississippi Transportation Comm'n v. McLemore*, 863 So. 2d 31 (Miss. 2003)], this Court adopted the standard initially laid out by the United States Supreme Court in *Daubert* [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)], and later modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *McLemore*, 863 So. 2d at 35, 39. That standard is a two-pronged test. For expert testimony to be admissible, it must be both relevant and reliable. *Id*. at 38. The party offering the testimony must show that the expert based his opinion not on opinions or speculation, but rather on scientific methods and procedures. *Id*. at 36.

¶34. The Court made it clear the role that the trial judge plays in assessing whether to allow expert testimony:

> The trial judge enjoys a role as a gatekeeper in assessing the value of the testimony. *Id*. at 39 [*McLemore*, 863 So.2d at 39]. To be relevant and reliable, the testimony must be scientifically valid and capable of being applied to the facts at issue. *Id*. at 36. *See also Poole ex rel. Poole v. Avara*, 908 So. 2d 716, 721-25 (Miss. 2005).

*Matthews*, 926 So. 2d at, 213.  See *also* **McLemore**, 863 So. 2d at 36 ("The trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue.' " (quoting **Daubert**, 509 U.S. at 592-93, 113 S. Ct. 2786)). As the trial court operates as the gatekeeper as to the admissibility of expert testimony, we examine the trial court's decision under an abuse of discretion standard of review. **Matthews**, 926 So. 2d at 216.

¶35.   Here, Dr. Smith testified in his deposition that he did not hold himself out as an expert in the field of adhesives.  Dr. Smith testified that his background was in wood sciences. Further, he did not perform any studies on the specific adhesives involved in this case.  Based on Dr. Smith's testimony, the trial court accepted his expert opinion as to wood, but it did not accept Dr. Smith as an expert regarding adhesive bonds.  Accordingly, the trial court did not consider Dr. Smith's opinion as to the adhesive.  We find the trial court did not abuse its discretion regarding Dr. Smith's testimony.

¶36.   Furthermore, the Plaintiffs did not present any expert in the area of caskets, casket design, or funeral/burial services.  Therefore, the Plaintiffs failed to present any expert at the motion for summary judgment to demonstrate that there was a defect in the product, a deviation from the manufacturer's specifications, or a defective design.

¶37.   The trial court further relied upon the Plaintiffs' deposition testimony that the reason the cherry casket was selected was for its aesthetic properties based on their mother's love of cherry wood.  In fact, Susan Moss testified as follows:

19

I'm not stupid. I know a casket won't seal - a wood casket. I knew that before that. But we were talking to him [Ray Pardue] about the casket, and he told us - we asked him about that one. And he told us it was top of the line, and that - but we had to buy a vault because the wood casket did not seal.

The testimony as the wood casket's inability to seal continued as follows:

Q: And you indicated that you were aware of that previously?
A: That the wood casket would not seal?
Q: Right.
A: Yes.
Q: You indicated that you told him you wanted a good casket. Did you tell him anything else in the casket that you wanted?
A: I don't remember really having a conversation, I mean, like, okay, I want one that's this color or this color or - we saw that one. It was kind of up at the front.
* * *
Q: Was there any more discussion? Did anyone later on say anything about maybe making another choice on a casket?
A: No, sir.
Q: So from that point on, there was no doubt it would be that Pembroke cherry wood casket?
A: Yes, sir.

¶38. It is apparent that the Plaintiffs were aware that the wood casket would not seal. The Plaintiffs even admit that Ott & Lee informed them that a wooden casket would not seal when the cherry wood casket was selected. As such, this characteristic of a wooden casket was open and obvious to the Plaintiffs at the time the casket was selected. The Plaintiffs did not present any evidence that they made any particular requests about of the casket. According to the Plaintiffs, once they spotted the cherry wood casket, they did not look any further. The trial court stated:

The Court is convinced from the deposition testimony that the Plaintiffs were well aware of the characteristic differences between a wooden casket as

20

compared to a metal one, but that the former was selected because of their mother's love of cherry wood.

¶39. Likewise, Dr. Smith stated that decay is a natural process in wood even though wood is a proper material to use to manufacture a casket. Clearly, it is obvious that an ordinary person would not expect an interred wooden casket to last forever. A concrete vault was selected, at Ott & Lee's suggestion, to use in conjunction with the casket since a wooden casket would not seal. As previously stated, there was no evidence that the remains had been damaged in any way by the alleged cracks and separations.

¶40. The trial court, finding no evidence of a defect in the product or defective design, concluded that the Plaintiffs failed to meet the recurring requirements under Miss. Code Ann. § 11-1-63. The trial court stated:

> The recurring statutory word(s) in said Code section are defect and defective. Section 11-1-63(b) addresses the particular facts in the case *sub judice*. To elaborate thereon and as stated aforesaid, one of the *inherent characteristic* of wood is that it rots, and absent any proof of any patent defect in the casket at the time of purchase, there can be no successful claim for a products liability violation.

The trial court further stated that "the heart of Dr. Smith's report laid the fault at the glue-line failures, a field which was not in the area of his expertise."

¶41. Likewise, in his report Dr. Kim did not hold himself out as an expert in the area of caskets or casket design. Dr. Kim stated that an alternative would have lasted longer under the conditions. However, no evidence was presented that demonstrated that the alternative glue would have allowed the wooden casket to last for an "indefinite" period of time. In fact, no specific time was provided. Again, there was no evidence that the Plaintiffs ever specified a

period of time that they expected the casket to last when the casket was selected. They were informed that the casket would not seal. Nothing presented by the Plaintiffs demonstrates that the remains had been affected by the alleged cracks and separations.

¶42.    Regardless of which subsection of Miss. Code Ann. § 11-1-63(a)(i) a plaintiff sues under, the plaintiff must prove: (1) the defective condition rendered the product unreasonably dangerous to the user or consumer unreasonably dangerous **and** (2) the defective and unreasonably dangerous condition of the product proximately caused the damages. *See* Miss. Code Ann. § 11-1-63(a)(ii) & (iii).

¶43.    The statute's language is clear that in order for the manufacturer or seller to be liable the requirements specified in subsections (a)(i)-(iii) shall be proven beyond a preponderance of the evidence. *See* Miss. Code Ann. § 11-1-63(a). This Court has held that "plaintiffs have the burden of showing that the 'defect that allegedly was the proximate cause of their injury existed at the time that the product left the hands of the manufacturer, **and** that the defect rendered the product unreasonably dangerous.'" *3M Co. v. Johnson*, 895 So.2d 151, 165 (Miss. 2005) (quoting *Clark v. Brass Eagle, Inc.*, 866 So.2d 456, 461 (Miss. 2004) (emphasis added)).

¶44.    Even considering Dr. Kim's affidavit, which was not presented until the Plaintiffs' motion for reconsideration, the Plaintiffs failed to demonstrate that the alleged defective condition of the casket resulted in an unreasonably dangerous condition to the user or consumer and that the defective and unreasonably dangerous condition of the casket proximately resulted in any damage as required under the Products Liability Act, Miss. Code

22

Ann. § 11-1-63(a)(ii) & (iii). *See 3M*, 895 So.2d at 165; *Brass Eagle*, 866 So.2d at 461; *Pickering*, 740 So. 2d at 843.

¶45.    Since the evidence necessary to maintain this suit under Miss. Code Ann. § 11-1-63 was legally insufficient, we find that summary judgment in favor of the Defendants as to the products liability claim was proper. This assignment of error is without merit.

### IV.    Negligence Claims

¶46.    The trial court concluded that the findings on the warranty counts are dispositive of the remaining counts. The Plaintiffs acknowledge on appeal that the remaining counts are based on the warranty counts, stating:

> [T]he trial court dismissed them [the remaining counts] apparently because they each rested on there having been an underlying breach of either a warranty or a duty revolving around the design or manufacture of the casket. In this, Judge Cotten was correct.

¶47.    The trial court, citing *May v. V.F.W. Post 2539*, 577 So. 2d 372, 375 (Miss. 1991), also stated that the Plaintiffs failed to prove the elements of negligence: (1) duty, (2) breach of that duty, (3) nexus, causation or proximate cause, and (4) damages. The Defendants contend that the Plaintiffs merely reargue the warranty claims previously discussed under the guise of negligence. We agree. The Plaintiffs fail to present any new discussion or claim that does not relate back to the warranty claims or the products liability claim which have previously been determined to be legally insufficient to survive summary judgment.

¶48.    In *May*, 577 So. 2d at 375, this Court stated:

23

> Because May brought a negligence claim against the VFW, he had to prove by a preponderance of the evidence: duty, breach of duty, proximate cause and damages. ***Foster v. Bass***, 575 So. 2d 967, 972 (Miss. 1990); ***Palmer v. Biloxi Regional Medical Center, Inc.***, 564 So. 2d 1346, 1354 (Miss. 1990); ***Phillips v. Hull***, 516 So. 2d 488, 491-92 (Miss. 1987). "**Only when the first two items are shown is it possible to proceed to a consideration of proximate cause since a duty and breach of that duty are essential to a finding of negligence** under the traditional and accepted formula." ***Foster***, 575 So. 2d at 972.

(Emphasis added). *See also **Lovett v. Bradford***, 676 So. 2d 893, 896 (Miss. 1996).

¶49.    Here, the Plaintiffs fail to establish what duty the Defendants owed. The argument reexamines the argument under the implied warranties discussed in Issues I and II. The Plaintiffs make a circular argument that the implied warranties establish the duty owed and because the implied warranties were breached, the duty had been breached. As discussed above, the Plaintiffs failed to establish that any implied warranties were breached.

¶50.    Furthermore, Ott & Lee argue that the Plaintiffs presented no expert as to what duty Ott & Lee owed with regard to the sale of this casket. Ott & Lee contends that the Plaintiffs chose the casket based on what they liked. The Plaintiffs were informed the wooden casket would not seal before the casket was purchased, and a burial vault was recommended.

¶51.    The record does not reflect that the remains had been damaged in any way at the time the Plaintiffs had their mother's body exhumed and the autopsy performed in an effort to investigate a possible medical malpractice case. Further, the Plaintiffs failed to establish that the Defendants breached any implied warranties. Thus, there was no evidence of any damage to the remains or any breach to support a negligence claim.

¶52. Therefore, we find the trial court did not err in finding that the necessary elements for a negligence claim had not been established and that the Defendants were entitled to summary judgment. Accordingly, this issue is without merit.

## CONCLUSION

¶53. For the reasons stated above, we find the trial court did not err in granting summary judgment in favor of the Defendants. Accordingly, the judgment of the Circuit Court of Scott County, Mississippi, is affirmed.

¶54. **AFFIRMED**.

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY**.