# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-02352-SCT

*TUNICA COUNTY, MISSISSIPPI, TOWN OF TUNICA, MISSISSIPPI, AND TUNICA COUNTY AIRPORT COMMISSION*

*v.*

*ANN MATTHEWS, TRUSTEE AND JOHN PRITCHARD, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2004 |
| TRIAL JUDGE: | HON. LARRY O. LEWIS |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANTS: | W. WHITAKER RAYNER<br>JAMES E. WOODS |
| ATTORNEY FOR APPELLEES: | PAUL R. SCOTT |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 04/13/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This appeal focuses on the issue of the proper methodology for the valuation of land and the determination of the proper amount of just compensation in an eminent domain case. Tunica County brought this action to take certain property from the landowners to use in expanding the existing airport in Tunica County.  After a trial, the jury determined the value of the land in question.  The only contested issue at trial, and here on appeal, is the value of

the land. A hotly contested issue in this case is certain expert testimony concerning the value of the land taken in these eminent domain proceedings. Finding no error, we affirm the final judgment entered by the Tunica County Special Court of Eminent Domain.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Tunica County, the Town of Tunica, and the Tunica County Airport Commission (referred to collectively as Tunica) filed this action in The Special Court of Eminent Domain in Tunica County to condemn certain property being used for agricultural purposes in Tunica County and to acquire the property to use as part of an expansion of the existing airport. That the land was being acquired for public use was not contested. Instead, the only dispute was the amount of money owed to the landowners for the land. The landowners' expert witness, Henry Dunklin, valued the land as having a highest and best use, which is the most feasible use that will produce the greatest profit of commercial or industrial property, and arrived at a price of $4,500 per acre, using comparable sales of commercial or industrial land. Granting in part a motion to exclude this testimony, the trial court precluded Dunklin from using comparable sales of the commercial or industrial property, or from testifying that the highest and best use for the property was commercial or industrial.

¶3. Nonetheless, the landowners prevailed at trial with a judgment that the land should be valued at $4,500 per acre. Using this valuation, the final judgment entered by the special court of eminent domain stated in pertinent part:

> Now, therefore, judgment is entered herein against Tunica County, Mississippi, the Town of Tunica, Mississippi, and the Tunica County Airport

Commission in the amount of Ninety-Seven Thousand Six Hundred and 00/100 Dollars ($97,600.00). The sum of $54,225.00 was deposited by the Plaintiff with the Clerk of this Court on October 16, 2000, under Order of the Court granting Plaintiff immediate title and possession and entry upon said property and appropriating it to the public use.

Now, upon payment of the additional sum of $43,375.00 with legal interest on said $97,600.00 at the rate of eight percent (8%) per annum from the date of filing of the complaint on August 4, 2000, until October 16, 2000, and with legal interest on the sum of $43,375.00 at the rate of eight percent (8%) per annum from November 29, 2000, until the payment of the balance of said award, with legal interest thereon as aforesaid, this Judgment shall have been satisfied by payment in full and ownership of the property shall be vested in the plaintiffs and it may be appropriated for the public use as prayed for in the complaint.

¶4.     To support their valuation of the subject property, the landowners relied on the expert testimony of Dunklin. Using a comparable sales approach method to value the land, which was stipulated by both parties to be the proper method, Dunklin identified a highest and best use of the land as industrial or commercial, concluding that the land should be valued at $4,500 per acre. Tunica's expert, Rip Walker, identified a highest and best use of limited residential or institutional with an interim use of agricultural, arguing for a price of $2,000 per acre. Tunica filed a motion to exclude Dunklin's testimony, and the trial court granted the motion in part, preventing Dunklin from offering an opinion as to the highest and best use of the land as to industrial or commercial, and from basing his opinion on any comparable sales which were commercial or industrial. Nonetheless, Dunklin's opinion as to the value of the land remained the same. Dunklin claimed to have been using a different approach and to have abandoned reliance on five highest-valued comparable sales he initially

3

used. Dunklin also based his opinion in part on a study concerning the use of the land for an airport expansion. Tunica filed another motion to exclude his testimony because it essentially remained unchanged. The trial court denied this motion. Tunica also appeals this ruling, arguing that case law from the United States Supreme Court and from this Court prevent this testimony from being used as it is not based on scientific principles. Tunica raises four issues in this appeal. The first three focus on whether the expert testimony should have been excluded under existing case law, namely, ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed 2d 469 (1993), and ***Mississippi Transportation Comm'n v. McLemore***, 863 So. 2d 31 (Miss. 2003). The final issue is whether the trial court erred in admitting certain photographs into evidence. Because the first three questions raised fall under the category of the admissibility of the expert's testimony, and for ease of analysis, we will address the four issues raised as only two issues, with the former subdivided into parts.

## DISCUSSION

¶5.     Our well-established standard of review for the trial court's admission or suppression of evidence, including expert testimony, is abuse of discretion. ***McLemore***, 863 So. 2d at 34. We give great deference to the discretion of the trial judge. "Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand." ***Crane Co. v. Kitzinger***, 860 So. 2d 1196, 1201 (2003).

4

## I.  WHETHER THE TESTIMONY OF THE LANDOWNERS' EXPERT WAS PROPERLY ADMITTED.

¶6.     Rule 702 of the Mississippi Rules of Evidence addresses the admissibility of expert testimony.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702.  In *McLemore*, this Court adopted the standard initially laid out by the United States Supreme Court in *Daubert*, and later modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *McLemore*, 863 So.2d at 35, 39.  That standard is a two-pronged test.  For expert testimony to be admissible, it must be both relevant and reliable.  *Id.* at 38.  The party offering the testimony must show that the expert based his opinion not on opinions or speculation, but rather on scientific methods and procedures.  *Id.* at 36.  The trial judge enjoys a role as a gatekeeper in assessing the value of the testimony.  *Id.* at 39.  To be relevant and reliable, the testimony must be scientifically valid and capable of being applied to the facts at issue.  *Id.* at 36.  *See also Poole ex rel. Poole v. Avara*, 908 So.2d 716, 721-25 (Miss. 2005).

5

## A. Whether Dunklin's testimony was reliable, thus satisfying *Daubert* and *McLemore*.

¶7. The landowners' expert, Henry Dunklin testified that the highest and best use of the land was commercial or industrial, and Dunklin initially used comparable sales from commercial or industrial property to reach his conclusion that the fair market value of the land should be $4,500 per acre. Tunica's expert, Rip Walker, meanwhile identified the highest and best use of the property as residential or institutional, with an interim use of agricultural. The land has always been used for agricultural purposes. Granting in part Tunica's motion to exclude, the trial court precluded Dunklin from testifying using these comparables or using this highest and best use. Tunica contends that because the trial court prevented Dunklin from basing his testimony on comparable sales that are commercial, his new valuation of the land should have been much lower, and, that the testimony therefore lacked reliability and was not the product of proper methodology.

¶8. The trial court found that commercial sales were not reliably comparable and should be excluded from evidence, referring to Dunklin's opinion as speculative that the highest and best use of the property was commercial or industrial, as it was incompatible with the property characteristics and area development history. Because there was no evidence presented of a probability of a change in zoning, the trial court excluded and prohibited comparable sales of commercial property and any testimony or statement of values based in whole or in part on such comparables. Later, after Dunklin's results remained the same,

6

Tunica filed a second motion to exclude Dunklin's testimony, and the trial court denied this motion to exclude.

¶9.    The comparable sales the trial court initially ordered excluded were five "per acre" values of $100,000, $56,000, $40,000, $32,000, and $26,000. Thus, the remaining "per acre" values were $18,500, $7,000, $5,500, and $5,000, plus one other new comparable of $7,500 per acre. Dunklin's appraised value of the land at $4,500 per acre remained the same after the trial court's order. Tunica claims that Dunklin's appraisal value remaining unchanged, despite the court order, offends basic principles of logic and mathematics. Tunica argues that Dunklin must have ignored the court's order and based his results on improper methodology. The landowners argue that real estate appraisal is much more complicated than a simple mathematical calculation, but instead requires analysis of all applicable information and data. The landowners point out that, in any case, Dunklin's appraised value of the land at $4,500 per acre was not only a lower per-acre price than all of the comparable sales he considered, both before and after the trial court's order, but was also a lower valuation than six of the nine comparable sales used by Tunica's appraiser.

¶10.    This Court has refused to accept testimony of values of comparables for a highest and best use different from that of the subject property. *See **Pearl River Valley Water Supply Dist. v. Brown***, 254 Miss. 685, 182 So. 2d 384, 388-89 (1966); ***Mississippi State Highway Comm'n v. Roche***, 163 So. 2d 874, 880 (Miss. 1964). However the trial court is vested with a gatekeeping responsibility to prevent the admission of expert testimony based on guess or

7

conjecture. *McLemore*, 863 So. 2d at 36. "The trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue.'" *Id.* (relying on *Daubert*, 509 U.S. at 592-93). Testimony concerning the valuation of the land is certainly relevant; it is the reliability of this testimony that is at issue. Tunica questions the reliability of the testimony, taking issue with Dunklin's conclusion not changing after the trial court's ruling. However, we have said:

> The Court in *Daubert* adopted a non-exhaustive, illustrative list of reliability factors for determining the admissibility of expert witness testimony. The focus of this analysis "must be solely on principles and methodology, not on the conclusions they generate." These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* at 36-37 (internal citations omitted). In *McLemore*, we reversed the admission of expert testimony[1] of a land appraisal in part because the method the expert employed in his appraisal was not printed in any textbook, not taught in seminars, unique to the *McLemore* appraisal, not a principle of any kind, and not taught in any of the licensing courses the expert completed. *Id.* at 41. The methodology employed by Dunklin in this case, however, meets the criteria of both Rule 702 and *McLemore*. The experts both agreed on using the comparable land sales approach as the proper methodology to value the land, a methodology

---

[1]The expert testimony in *McLemore* was that of Rip Walker, Tunica's expert in today's case.

8

that easily meets the ***Daubert*** factors. It was not Dunklin's entire testimony, nor his result, which the trial court found to be unreliable; but, instead, the trial court found the use of commercial sales as comparables and the reliance on a highest and best use of commercial and industrial to be unreliable. The trial court made this clear in its orders, which denied Tunica County's second motion only upon conditions Dunklin had to fulfill in his testimony. We are quite simply unable to find that the trial court abused its discretion, or failed in its gatekeeping responsibility, in admitting this testimony. The testimony was admissible, thus placing before the jury the issue of what weight or credit to afford to this testimony.

¶11. We have long held that the jury may reject or accept any expert testimony it chooses in cases involving land valuation. "The jury in the trial of a case of this kind is not required to accept the opinion evidence of an expert witness who testifies for the land owner or the county. The jury may disregard the testimony of a witness whose testimony the jury has reasonable grounds to believe is worthless." ***Warren County v. Harris***, 211 Miss. 80, 88, 50 So. 2d 918, 920 (1951). In addition, the jury had the opportunity to inspect the subject land in this case, and was to use this, too, in coming to its decision. "The opinions of experts as to values in cases of this kind are not to be passively received and blindly followed, but are to be weighed by the jury and judged in view of all of the testimony in the case and the jury's own general knowledge of affairs, and are to be given only such consideration as the jury may believe them entitled to receive." ***Id.*** at 921. This rule is often cited in Mississippi case law. *See, e.g.,* ***Miss. State Highway Comm'n v. Madison County***, 242 Miss. 471, 480,

9

135 So.2d 708, 712 (1961); *N. Biloxi Dev. Co., L.L.C. v. Miss. Transp. Comm'n*, 912 So. 2d 1118, 1126 (Miss. Ct. App. 2005); *Bishop v. Miss. Transp. Comm'n*, 734 So. 2d 218, 222 (Miss. Ct. App. 1999). For these reasons, we find that the correct valuation of the land was entirely a jury question, and, we thus find no fault in the trial judge's decision to admit this testimony.

### B. Whether Dunklin's opinion on the property's highest and best use was consistent with the trial court's order.

¶12. Tunica claims Dunklin failed to adopt any new opinion of highest and best use and continued to rely on his initial testimony because he arrived at exactly the same price per acre after the court's order. Tunica draws our attention to numerous places in the record to illustrate this fact by way of references to answers to interrogatories and Dunklin's deposition. Because Dunklin's initial opinion was that the highest and best use of the property was commercial and industrial, and because he continued to testify to that effect, Tunica asserts that his opinion was not in keeping with the court's order. It is true that Dunklin continued to believe that the highest and best use of the land should have been commercial or industrial, but the court did not order Dunklin to change his actual opinion. The court order only prohibited his testimony *based on* comparables of commercial or industrial land or *based on* a highest and best use of commercial or industrial. Dunklin makes it clear in his deposition that, despite his own opinion, he understood the confines of

10

the court order and kept his testimony within those boundaries. Again, we cannot find an abuse of discretion by the trial court in admitting Dunklin's testimony.

### C. Whether Dunklin's use of the airport study was proper.

¶13. Finally, Tunica asserts Dunklin's testimony should have been stricken because he placed value on the property based in part on previous airport studies which had identified the land as a possible site for future airport expansion. Dunklin testified that obtaining fair market value is predicated on a knowledgeable seller dealing with a knowledgeable buyer, and that an informed property owner who knew of the study, and who knew the land was needed for the airport, would not have sold the subject land as farm acreage. Tunica County argues this methodology is improper, relying on *Pearl River Valley Water Supply*, where this Court held that in eminent domain proceedings, "damages are assessed and compensation determined as of the time of taking, but general benefits and injuries resulting from the use to which the land is to be put, and which are shared by the general public, are not to be considered in awarding damages." *Pearl River Valley Water Supply Dist*., 182 So. 2d at 385.

¶14. The definition of fair market value is not new to this Court. "In numerous cases, we have stated that the fair market value is the amount of money which could be obtained on the open market at a voluntary sale of property; the amount that a purchaser who is willing, but not required to buy, would pay, and the amount that a seller who is willing, but not required to sell, would accept." *Bear Creek Water Ass'n, Inc. v. Town of Madison*, 416 So.2d 399,

11

402 (Miss. 1982). We also stated in **Bear Creek** that determining the fair market value "necessarily requires that both the purchaser and the seller be fully informed of all circumstances involving the value and use of the property so that an approximation of its present worth might be determined." **Id.** at 403.

¶15. Tunica objected at trial to the relevance of a 1995 study's effect on a 2000 sale of land. Tunica now relies on **Pearl River Valley Water Supply** and is correct to do so with regard to the rule that the valuation of the land is to be determined at the time of the eminent domain proceedings. However, in **Pearl River Valley Water Supply**, dealing with the creation of the Ross Barnett Reservoir, we also said that the landowner may show and claim enhancement in value of the land prior to the taking. **Pearl River Valley Water Supply Dist.**, 182 So.2d at 386. The study Dunklin referred to was nothing more than an analysis that, given Tunica County's rapid growth, due in part to the casino industry, a bigger airport was needed, and that the most logical place to put a new airport was where the current one already stood. "We cannot conceive of a prospective purchaser of commercial property, in an area being transformed by urban renewal, not inquiring into the zoning restrictions on the property, the plans for streets and alleyways, the lot frontage on such streets, etc., so that he might determine its suitability for his purpose." **Paulk v. Housing Authority of City of Tupelo**, 204 So. 2d 153, 155 (Miss. 1967) (finding urban renewal plans should have been allowed into evidence). The airport study did not serve the purpose of showing the benefits which would be available to the general public from the new use of the land, but rather what

12

information existed which was at the disposal of both a knowledgeable and willing seller and buyer. Thus, we are unquestionably unable to find that the trial court abused its discretion in admitting this testimony.

¶16. We review the trial court's decision today, looking only for an abuse of discretion. The trial judge's decision to admit the testimony must be given wide latitude. Because the testimony was based upon sufficient facts or data, was the product of reliable principles and methods, and was based on principles and methods reliably applied to the facts of the case, the testimony was able to assist the trier of fact and thus passes muster under Rule 702. As discussed above, the testimony also meets the *Daubert* test and was properly admitted. This issue is without merit.

II. **WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF PROPERTY NOT USED AS COMPARABLES.**

¶17. The final issue is an assignment of trial court error for the admission of certain photographs into evidence. The trial court admitted photographs offered by the landowners into evidence as exhibits D-1, D-2, D-4, and D-5. Because the photographs were not used as comparables to the landowners' property at issue, Tunica objected to their introduction into evidence and asserts on appeal that the pictures were irrelevant and prejudicial, and therefore, only confused the jury.

¶18. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Yoste v. Wal-Mart Stores, Inc.*, 822 So. 2d 935, 936 (Miss. 2002). We have long

13

held that the admissibility of photographs is within the sound discretion of the trial court and that the trial judge has a wide latitude in admitting them. *Smith v. Mississippi State Highway Comm'n*, 423 So. 2d 808, 812 (Miss. 1982). We will not disturb the trial court's ruling unless there is a clear abuse of discretion. *Id.* We have also noted that when the only purpose of photographs is to influence and prejudice the jury they should be excluded. *Butler v. Chrestman*, 264 So. 2d 812, 816 (Miss. 1972). However, this is not the case today. That the photographs were not being introduced as evidence of comparables was made clear at trial.

¶19. We have upheld a trial court's decision to allow photographs of areas which underwent changed conditions as long as the jury was informed of the changes. *Nelson v. Phoenix of Hartford Ins. Companies*, 318 So. 2d 839, 843 (Miss. 1975). Recognizing that the trial court has wide latitude and discretion with regard to the admission of photographs, this Court held in *Nelson* that the mere fact that the photographs were taken at a time when conditions were somewhat changed did not render such photographs inadmissible, so long as the changes were carefully pointed out to the jury. *Id.* The trial court in *Nelson* was justified in allowing the introduction of the photographs into evidence, so long as the court provided proper explanation to the jury of the changes. *Id.* This is not unlike the situation in the case before us now. Though the photographs admitted in this case were not of comparable property used by Dunklin in formulating his opinions, the photographs were not offered as such. The landowners merely wished to establish that Dunklin was familiar with

14

the area in which the land was located and that Dunklin had been thorough in his appraisal of the area. In overruling Tunica County's objections, the trial court clarified that the pictures were not of property used in determining comparable value, and that they were not being admitted as such. Because the trial judge made it clear the photographs were not comparables, and given the wide latitude the trial court enjoys in admitting or excluding photographs, we find no abuse of discretion in the trial court's admitting these photographs into evidence. This issue is thus without merit.

## CONCLUSION

¶20. In reviewing the trial court's decision today, we look only for an abuse of discretion with regard to the admission of evidence in this case, both in the expert testimony of Henry Dunklin and in the photographs. We have concluded that Dunklin's expert testimony meets the requirements both of Miss. R. Evid. 702 and of ***Daubert*** and was thus properly admitted. Admission of the photographs also does not amount to an abuse of discretion. The case was properly submitted to the jury, which made its decision after hearing all of the properly admitted evidence. For these reasons, we affirm the final judgment entered by the Special Court of Eminent Domain of Tunica County.

¶21. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, GRAVES AND DICKINSON, JJ., CONCUR. COBB, P.J., DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**