# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00820-COA

**HAROLD LEO RUSSELL, SR.**                                    **APPELLANT**

v.

**GRACIE COCHRAN RUSSELL**                                    **APPELLEE**

DATE OF JUDGMENT:             04/15/2013
TRIAL JUDGE:                  HON. H. DAVID CLARK II
COURT FROM WHICH APPEALED:    SCOTT COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       J. EDWARD RAINER
ATTORNEY FOR APPELLEE:        EARL P. JORDAN JR.
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:      DENIED APPELLANT'S PETITION FOR
                              MODIFICATION OF ALIMONY
DISPOSITION:                  AFFIRMED - 10/07/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND CARLTON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Harold Leo Russell Sr. (Leo) appeals the Scott County Chancery Court's denial of his petition for modification of alimony. On appeal, Leo raises the following issues: (1) whether the chancellor erred by denying his petition to terminate or modify his alimony payments; and (2) whether the chancellor erred by refusing to admit into evidence certain deposition testimony. Finding no error, we affirm.

## FACTS

¶2.     Leo and Gracie Cochran Russell divorced in 1978. As a result of the divorce judgment, Leo was ordered to pay Gracie $2,500 each month in permanent alimony. In

2006, Leo filed his first petition for termination or reduction of his alimony payments. The chancellor dismissed the petition without prejudice. In 2011, Leo filed a second petition for termination or reduction of his alimony payments, which is the subject of the current litigation between the parties.

¶3.     In an order entered in May 2012, the chancellor reduced Leo's monthly alimony payments to $1,553 after determining that Gracie received $947 each month in Social Security benefits from Leo's earnings. After hearing all the evidence and testimony presented by the parties, the chancellor entered a final order in which he found that Leo failed to demonstrate a material change in circumstances or an inability to meet his alimony obligation. The chancellor therefore denied Leo's petition for termination or modification of his alimony payments. Leo filed a motion to grant a new hearing or, in the alternative, to alter, amend, or otherwise reconsider the chancellor's final order. The chancellor denied Leo's motion. Aggrieved by the chancellor's ruling, Leo appeals to this Court.

## STANDARD OF REVIEW

¶4.     "This Court's standard of review in domestic relations matters is extremely limited." *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010). We will not disturb a chancellor's findings unless the findings were manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Id.* Where the record contains substantial evidence to support the chancellor's findings of fact, we will not reverse his decision. *Id.*

## DISCUSSION

**I.     Whether the chancellor erred by denying Leo's petition to**

2

**terminate or modify his alimony payments.**

¶5.     In his first assignment of error, Leo argues that the chancellor erred by denying his petition to terminate or modify his monthly alimony payments. Leo asserts that the chancellor erroneously found no material change in his circumstances and that his retirement and reduction of income were foreseeable at the time of the parties' divorce.

¶6.     With regard to our review of a chancellor's award of alimony, this Court has previously stated:

> An award of alimony, if allowed, should be reasonable in amount, commensurate with the wife's accustomed standard of living, minus her own resources, and considering the ability of the husband to pay. The amount of an alimony award is largely within the discretion of the chancellor. Unless the chancellor is in manifest error and abused [his] discretion, we will not reverse.

*Peterson v. Peterson*, 129 So. 3d 255, 256-57 (¶5) (Miss. Ct. App. 2013) (internal citations and quotation marks omitted).

¶7.     "The general rule has been that periodic alimony terminates upon death or remarriage." *Skinner v. Skinner*, 509 So. 2d 867, 869 (Miss. 1987) (citing *Wray v. Wray*, 394 So. 2d 1341, 1344 (Miss. 1981)). When considering a party's petition to modify or terminate an award of periodic alimony, a chancellor must first determine whether "an unforeseeable and material change in circumstances occurred since entry of the initial divorce decree." *Peterson*, 129 So. 3d at 257 (¶7) (citing *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (¶11) (Miss. 2002) ("The change in circumstance must not be anticipated by the parties at the time of the original decree."). If no unforeseeable and material change has occurred, then a modification of the alimony award is improper. *Id.* However, where a substantial

unanticipated change has occurred, the chancellor should consider the *Armstrong*[1] factors to determine the proper amount of alimony. *Id.* at (¶8).

¶8. In the present case, Leo argues that his retirement and the resulting reduction in his income were unanticipated at the time the parties divorced in 1978. In his brief, Leo asserts the following:

> [T]hough it may have been anticipated that at some time in the future [he] might retire and discontinue working, such an event is not an event that the [c]ourt can hold [him] to with respect to [the] same being a "foreseeable future event" that will preclude a termination of alimony or a reduction of alimony at the time of retirement.

¶9. In denying Leo's petition to terminate or reduce his alimony payments, the chancellor found that retirement, by itself, proved insufficient to justify a modification. Although Leo had retired since the parties' divorce, the chancellor found that Leo still possessed sufficient assets and income to satisfy his alimony obligation. The chancellor noted that Leo's living expenses were approximately $10,000 a month and that Leo bought a new home about seven years earlier. Other than the remaining home payments, the chancellor found that Leo had finished paying all other significant debt.

¶10. The chancellor also noted that Leo's other financial obligations resulting from the divorce, such as child support, had long since been fulfilled. In addition, the chancellor stated that Leo had received proper credit for the Social Security benefits Gracie received from his past employment earnings. Therefore, based on the evidence presented by the parties, the chancellor found that Leo failed to demonstrate a substantial and material change in his circumstances.

---

[1] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶11. The chancellor also discussed whether any changes in Leo's circumstances were unanticipated, stating, "There was no mention [made] at the time [of the parties' divorce] . . . of what would transpire when one or the other party retired. Certainly it was foreseeable that [Leo] would retire, [but] it's not mentioned." As the record reflects, Leo retired in 2010 after turning seventy-five. Although he found that Leo's retirement was a reasonably foreseeable event at the time the parties divorced, the chancellor still considered the *Armstrong* factors. Concluding his analysis, the chancellor stated:

> There has been no substantial and material change. The fact that [Leo] is retired was foreseeable. And even if you do a—well, it's impossible to do much of an analysis because we don't have beginning information [for 1978,] . . . but if you do an analysis under *Armstrong* and you look at the assets and the income[s] of the parties, not only today but over the years, no reduction in alimony is warranted.

¶12. After reviewing the record and relevant caselaw, we find no abuse of discretion by the chancellor's denial of Leo's petition for modification of his alimony payments. *See Peterson*, 129 So. 3d at 256-57 (¶5). The chancellor found that no material change occurred and that Leo possessed sufficient financial resources to continue paying his monthly alimony obligation. The chancellor also found that no unanticipated event occurred since Leo's retirement was reasonably foreseeable at the time of the parties' divorce. Because the record contains substantial evidence to support the chancellor's findings, we find no merit to this assignment of error.

**II.    Whether the chancellor erred by refusing to admit into evidence certain deposition testimony.**

¶13. In his next assignment of error, Leo contends that the chancellor erred by finding inadmissible the deposition testimony of one of his expert witnesses, Dr. Joyce Wade-

5

Hamme. "Our well-established standard of review for the trial court's admission or suppression of evidence, including expert testimony, is abuse of discretion." *Tunica Cnty. v. Matthews*, 926 So. 2d 209, 212 (¶5) (Miss. 2006) (citation omitted). "Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the] decision will stand." *Id.* at 212-13 (¶5) (citation omitted).

¶14.    The record reflects that the chancellor found Dr. Wade-Hamme's deposition testimony inadmissible because her deposition was taken after the discovery deadline passed. In his May 4, 2012 order, the chancellor extended discovery, beginning on April 18, 2012, for a period of ninety days. Trial on the parties' matter began on August 24, 2012. However, after finding a need for additional evidence, the chancellor continued the trial to a later date. On December 5, 2012, the chancellor entered an amended order setting the parties' final hearing for April 15, 2013.

¶15.    On December 26, 2012, Leo's attorney filed a notice stating that Dr. Wade-Hamme's deposition would be taken on January 11, 2013. Gracie's attorney filed an objection, asserting that the "deadline for commencing discovery has ceased[,] and this case is in the middle of trial." On January 17, 2013, Leo's attorney filed a designation of expert witnesses that designated Dr. Wade-Hamme and a certified public accountant as Leo's expert witnesses. The document provided that Dr. Wade-Hamme would testify about Leo's medical conditions and work capabilities.

¶16.    When trial resumed on April 15, 2013, Gracie's attorney objected to the testimony of Leo's expert witnesses. After hearing the parties' arguments, the chancellor admitted into evidence the expert testimony of Leo's accountant. The chancellor noted that he specifically

6

continued the trial for the purpose of obtaining the information provided by the accountant. The chancellor further found that Gracie had knowledge of this and therefore suffered no surprise or prejudice by the admission of the accountant's testimony.

¶17. With regard to Dr. Wade-Hamme's deposition testimony, however, the chancellor ruled it was inadmissible because the deposition was taken outside the time provided for discovery. As a result, Dr. Wade-Hamme's deposition was marked for identification purposes only. On appeal, Leo argues that the chancellor abused his discretion by refusing to admit Dr. Wade-Hamme's deposition into evidence and that the chancellor's decision greatly disadvantaged Leo's case.

¶18. Rule 1.10(A) of the Uniform Chancery Court Rules provides that, "[a]bsent special circumstances[,] the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." In addition, our caselaw recognizes that "[t]he purpose of the strict discovery rules is . . . to avoid trial by ambush and to ensure that all parties involved have a reasonable time for trial preparation." *Poole ex rel. Poole v. Avara*, 908 So. 2d 716, 725 (¶19) (Miss. 2005) (citation omitted). Based on our review of the record and applicable caselaw, we find no abuse of discretion by the chancellor's refusal to admit into evidence Dr. Wade-Hamme's deposition testimony. *See Tunica Cnty.*, 926 So. 2d at 212-13 (¶5). As the record reflects, Leo failed to depose Dr. Wade-Hamm within the time limits set by the chancellor even though the chancellor extended the discovery deadline. We therefore cannot say that the chancellor's ruling amounted to an abuse of discretion or was arbitrary or clearly erroneous. *See id.* Accordingly, this argument lacks merit.

¶19.   **THE JUDGMENT OF THE SCOTT COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  GRIFFIS, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**