# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00882-COA

GERALD BRADSHAW                                              APPELLANT

v.

WANDA BRADSHAW                                               APPELLEE

DATE OF JUDGMENT:            07/02/2024
TRIAL JUDGE:                 HON. JENNIFER T. SCHLOEGEL
COURT FROM WHICH APPEALED:   HARRISON COUNTY CHANCERY COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      CHARLES E. LAWRENCE JR.
ATTORNEY FOR APPELLEE:       WANDA BRADSHAW (PRO SE)
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 12/16/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     The Harrison County Chancery Court awarded Wanda Bradshaw a judgment of $18,300 after finding her ex-husband Gerald Bradshaw in "willful contempt" for failing to pay Wanda court-ordered alimony payments. The court also granted Gerald's request to reduce the monthly alimony amount by $200.

¶2.     Gerald appeals the judgment, contending: (I) the chancery court's finding of contempt was erroneous because Gerald had demonstrated an inability to pay; and (II) the court should have granted Gerald a larger downward modification of the monthly alimony payment or terminated the payment obligation entirely. We find no error and affirm the judgment.

## Facts and Procedural History

¶3.    Wanda and Gerald Bradshaw were divorced by order of the chancery court on February 28, 2020.  In the judgment of divorce, the chancery court ordered Gerald to pay Wanda periodic monthly alimony in the amount of $800.  The court noted that Wanda, who was "disabled and no longer [had] the ability to earn an income," had a monthly adjusted gross income of $1,191 compared to Gerald's adjusted gross income of $2,800 per month.

¶4.    Wanda filed a complaint for contempt on June 4, 2020, alleging that Gerald had not been paying the court-ordered alimony.  A hearing was held on November 16, 2020.  Wanda testified that Gerald was several months in arrears on the alimony payments, and she "had to expunge [her] savings to pay [her] bills."  She claimed that when Gerald discovered that she was receiving disability benefits, he refused to pay her.  Gerald, who had fired his attorney, was not represented by counsel at the hearing.  He contended that he did not receive the final judgment of divorce until June 4, 2020, but he admitted that he knew about the court's temporary order, in which he had been ordered to pay Wanda $1,500 in monthly spousal support.

¶5.    The chancery court entered a final judgment of contempt against Gerald on November 17, finding Gerald was "in arrears in the amount of nine thousand dollars ($9,000.00)." Gerald was ordered to pay an additional $200 per month to Wanda until the arrearage was paid in full.  The court also ordered Gerald to pay Wanda's attorney's fees in the amount of $1,500, for a total judgment of $10,500.[1]

¶6.    On March 7, 2023, Wanda filed another complaint, in which she claimed Gerald was

---

[1] Gerald filed a motion for reconsideration of the judgment on December 15, 2020, which the chancery court later dismissed for want of prosecution on March 23, 2022.

in contempt of the previous judgment because he had failed to pay the $200 monthly arrearage as directed by the court, as well as the ongoing monthly alimony payment of $800. Gerald responded by filing a motion for modification of support on March 16, 2023, requesting that the chancery court terminate the alimony award entirely. In the motion, he claimed that a material change in circumstances had occurred—i.e., Wanda's increased social security disability benefits and her ability to earn income as a private sitter and caterer.

¶7. The chancery court held a trial on June 6, 2024, to address the issues raised in the parties' filings. Wanda testified that because of the inconsistent alimony payments, she had to take a job as a sitter for a former boss's elderly mother in order to pay her bills. Since she had "lupus and arthritis," Wanda could only work as a sitter two nights every other week. She also had to take out a title loan on her vehicle to pay her credit card debt. Although Wanda acknowledged she had worked as a caterer "once a year" for "VA catering," she claimed she had since turned over the catering business ("WB Catering") to her daughters. She said that she only earned $800 "at the most" from the catering job and approximately $775 for the sitting job. Wanda's monthly disability benefit is $1,561.[2]

¶8. In addition to lupus and rheumatoid arthritis, Wanda also suffers from fibromyalgia, high blood pressure, high cholesterol, and back issues.[3] Wanda testified that her monthly mortgage payment is $901 and that the mortgage on her house would be paid in full in March 2026, although she did have to borrow $25,000 against the mortgage when she stopped

---

[2] Wanda was declared disabled in 2016.

[3] Wanda said she had to "take 17 pills every morning in order to function," in addition to over-the-counter pain medicine.

receiving alimony in order to pay her car note and credit cards.

¶9.    Gerald testified that his monthly gross income was $4,023.26, but his total expenses were $4,183.58. He argued an inability to pay as a defense against the contempt allegations, claiming that he had to buy a new vehicle, his automobile insurance had increased, and his household income had been reduced due to his current wife's illness. Regarding the $1,000 per month he paid for automobile expenses, Gerald said that in April 2023, his 2007 truck "went out"; so he purchased a 2021 Nissan Altima, which has a high-interest-rate loan due to his bad credit. However, Gerald did admit that he had paid Wanda alimony payments for April, June, July, August, September, and October of 2023, which was right after he purchased the new vehicle. Gerald also had a couple of accidents, resulting in an increase to his car insurance premiums. Gerald testified that he also had to "pick up the extra bills that were not mine" after his current wife was injured and could not work. Gerald reported medical issues of his own (a heart attack and pancreatic cancer).

¶10.    The chancellor issued a bench ruling, finding Gerald "did not prove an inability to pay"; nor did he make a "good faith effort" to pay the alimony payments and arrearage. Acknowledging that Wanda's disability benefits would "slightly increase in the coming years," the chancellor granted Gerald a $200 reduction in the monthly alimony payments. However, the chancellor found that Wanda "should not be penalized for attempting to make up the difference in her income . . . [by pursuing] the amount in which Mr. Bradshaw was in contempt."

¶11.    The chancery court issued a final judgment of contempt on July 2, 2024, awarding

Wanda a judgment of $18,300 in arrearage. Gerald was ordered to pay $400 per month toward the accrued arrearage until it is paid in full. The court's judgment reduced Gerald's monthly alimony payment by $200 per month, "which is one-half (1/2) of the amount Wanda's disability income has increased since the Final Judgment of Divorce."

¶12. Gerald appeals from the chancery court's July 2, 2024 judgment. Wanda has not filed an appellee's brief. Our Court has determined that when an appellee does not file a brief, we have two alternative ways to proceed in reviewing the case.

> (1) When the record is complicated or of large volume, and the case has been thoroughly briefed by appellant with a clear statement of the facts, and with applicable citations of authorities, so that the brief makes out an apparent case of error, we will not regard ourselves as obliged to look to the record or to search through it to find something by which to avoid the force of appellant's presentation, but will accept appellant's brief as confessed and will reverse. Or (2) when the record is in such condition that we can conveniently examine it, and when upon such an examination we can readily perceive a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we will take that course and affirm, thereby to that extent disregarding the default of appellee. But when, taking into view the argument presented by appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirmance, the judgment will be reversed without prejudice.

*Showers v. Norwood*, 914 So. 2d 758, 761 (¶8) (Miss. Ct. App. 2005) (quoting *W.T. Raleigh v. Armstrong*, 165 Miss. 380, 380, 140 So. 527, 527-28 (1932)). In this case, we find the record "can be conveniently examined[,] and such examination reveals" that Gerald did not demonstrate an inability to pay. In addition, we find no error in the chancery court's decision to reduce Gerald's alimony payments by only $200, one-half of the amount that Wanda's disability income had increased.

## Standard of Review

¶13. Our Court conducts a limited review of a chancery court's ruling in domestic matters. *Brown v. Brown*, 329 So. 3d 544, 555 (¶28) (Miss. Ct. App. 2021). "We will not disturb the findings of a chancellor unless manifestly wrong, clearly erroneous, or if the chancellor applied the wrong legal standard." *Id*. (quoting *Allgood v. Allgood*, 62 So. 3d 443, 446 (¶7) (Miss. Ct. App. 2011)). We review legal questions de novo. *Id*.

¶14. "Contempt matters are committed to the sound discretion of the trial court," and "the reviewing court will not reverse the chancellor's findings if they are supported by substantial credible evidence." *Braswell v. Braswell*, 336 So. 3d 1121, 1128 (¶24) (Miss. Ct. App. 2021).

## Discussion

**I. Whether the chancery court erred in finding Gerald was in willful contempt by failing to pay the court-ordered alimony.**

¶15. "In a contempt action, when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so, a prima facie case of contempt has been made." *Powell v. Powell*, 411 So. 3d 1129, 1140 (¶50) (Miss. Ct. App. 2025) (quoting *Durr v. Durr*, 912 So. 2d 1033, 1039 (¶18) (Miss. Ct. App. 2005)). There was no dispute that Gerald was in arrears with the alimony payments to Wanda.

¶16. "A defendant may avoid a judgment of contempt by showing that he is without the present ability to discharge his obligations." *Braswell*, 336 So. 3d at 1133 (¶41). "However, the defendant must prove his inability to pay 'in particular terms.'" *Id*. (quoting *Riser v. Peterson*, 566 So. 2d 210, 211 (Miss. 1990)). Gerald claims the evidence showed that

6

"necessary and reasonable" increases in his expenses contributed to his inability to pay the alimony.

¶17. At the hearing, the chancellor determined that Gerald "did not prove an inability to pay," noting Gerald's failure "to corroborate his self-serving statements" with documentation such as "bank statements, copies of bills, et cetera." Furthermore, because Gerald "did not attempt to make even small payments toward his alimony" obligation, the court found "there was no good faith effort" on Gerald's part. The court concluded that while Gerald's "lifestyle expenses" are high, "he still has a higher income than [Wanda]."

¶18. We find that the chancery court's findings are supported by the record. "[I]f a husband wishes to prove an inability to pay, his evidence must show 'that he earned all he could, that he lived economically, and paid all surplus money above a living on the alimony decreed to his wife.'" *Lane v. Lane*, 850 So. 2d 122, 126 (¶12) (Miss. Ct. App. 2002) (quoting *Kincaid v. Kincaid*, 213 Miss. 451, 456, 57 So. 2d 263, 265 (1952)). Thus, "the payment of other debts or expenses will not excuse or justify his default, unless such payment was necessary in order to continue his business or occupation, because his wife's right to alimony is a prior and paramount claim on his earnings." *Id*.

¶19. For example, although Gerald's current wife, Melinda Bradshaw, confirmed in her testimony that she had been temporarily out of work for approximately four months without pay, she admitted that she previously had been paying only her personal bills (automobile insurance and "whatever was needed other than what Gerald couldn't" pay) from her income. Melinda did not pay their household bills, such as the mortgage, utilities, or property taxes

(i.e., the items listed on Gerald's Rule 8.05 statement).[4]

¶20. In addition, Gerald's increased automobile expenses were due to increased premium payments because of his automobile accidents and his inability to obtain a favorable interest rate because of bad credit. Further, when Gerald's 2007 truck "went out" in April 2023, he replaced it with a newer model (a 2021 Nissan Altima) with a higher APR loan.[5] We do not find that the reasons Gerald cited "excuse or justify his default."

¶21. Finding no error, we affirm the court's ruling that Gerald was in willful contempt of the court's order.

## II. Whether the chancery court's modification of the alimony payment was in error.

¶22. The chancery court reduced Gerald's monthly periodic alimony payments by $200. The court reasoned that "Wanda's increase in her disability payment was a foreseeable change, and she should not be penalized for attempting to make up the difference in her income in the amount he was ordered to pay her—as her paystubs demonstrated her additional income was almost equal to his alimony payment." Gerald appeals the court's ruling, claiming that the chancery court should have terminated the alimony payments, noting Wanda's "present ability to earn more income through her catering business" and his increase in living expenses.

¶23. This Court has held:

---

[4] *See* UCCR 8.05.

[5] Wanda, on the other hand, had to obtain a $25,000 loan in order "[t]o get [her] car back, [to] pay [her] car off, . . . and to pay [her] credit cards off" as a result of Gerald's not paying her alimony.

> With respect to requests for modification of a previously ordered alimony award, chancellors are vested with general statutory authority to modify divorce decrees and make "new decrees as the case may require." Miss. Code Ann. § 93-5-23 (Rev. 2013). Within this broad authority is the more specific power to increase, decrease, or terminate periodic alimony payments. *Hubbard v. Hubbard*, 656 So. 2d 124, 129 (Miss. 1995). When asked to modify periodic alimony awards, chancellors must first determine if an unforeseeable and material change in circumstances occurred since entry of the initial divorce decree. *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (¶11) (Miss. 2002). If not, modification is not permitted.

*Peterson v. Peterson*, 129 So. 3d 255, 257 (¶7) (Miss. Ct. App. 2013). However, if there is "a substantial unanticipated change" that has occurred, a chancery court should consider the factors set forth in *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993),[6] to determine an appropriate amount of alimony. *Peterson*, 129 So. 3d at 257 (¶8). The chancery court "has substantial discretion in reaching a decision that [it] finds equitable and fair to both parties." *Easterling v. Easterling*, 245 So. 3d 548, 552 (¶16) (Miss. Ct. App. 2018) (citing *Seale v. Seale*, 863 So. 2d 996, 999 (¶14) (Miss. Ct. App. 2004)).

¶24. Noting the foreseeable increase in Wanda's disability benefits, the chancery court granted Gerald's request to modify the alimony, decreasing the monthly payment by $200. However, the chancery court further determined that Gerald should not be given relief simply because Wanda supplemented her income due to Gerald's failure to make alimony payments

---

[6] These factors are (1) "[t]he income and expenses of the parties"; (2) "[t]he health and earning capacities of the parties"; (3) each party's needs; (4) each party's "obligations and assets"; (5) "[t]he length of the marriage"; (6) whether there are minor children in the home, requiring "that one or both of the parties either pay, or personally provide, child care"; (7) "[t]he age of the parties"; (8) the parties' standard of living, "both during the marriage and at the time of the support determination"; (9) "[t]he tax consequences of the spousal support order"; (10) "[f]ault or misconduct"; (11) "[w]asteful dissipation of assets by either party"; or (12) "[a]ny other factor deemed by the court to be 'just and equitable' in connection with the setting of spousal support." *Armstrong*, 618 So. 2d at 1280.

in a timely manner. Due to Wanda's medical conditions, she is only able to work one eight-hour day per week for her former boss's invalid mother and to cater one annual event for the Department of Veterans Affairs, for which she netted between $700 and $800. There is no evidence in the record that Wanda's health and disability would allow her to cater on any type of continual basis.

¶25.    Regarding Gerald's alleged increase in living expenses, the Mississippi Supreme Court has rejected "the idea that alimony or child[-]support obligations should be reduced because of the obligor's other financial commitments." *Yancey v. Yancey*, 752 So. 2d 1006, 1010 (¶12) (Miss. 1999) (citing *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995)). "Personal bills cannot be used as a factor to reduce support payments." *Varner*, 666 So. 2d at 497.

¶26.    Considering the totality of the relevant circumstances, we conclude that the chancery court's findings are supported by the evidence and that the court did not manifestly err or abuse its discretion in declining to terminate the alimony payments. Accordingly, we affirm the chancery court's judgment.

¶27.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

10